UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard Alexander,            Case No. 3:20-cv-2636

         Plaintiff,

v.            MEMORANDUM OPINION
           AND ORDER

State Farm Fire & Casualty Co.,

         Defendant.

## I. INTRODUCTION

Plaintiff Richard Alexander filed suit against Defendant State Farm Fire & Casualty Co. in the Lucas County, Ohio Court of Common Pleas, seeking to recover monetary damages from State Farm on a casualty insurance policy State Farm issued on a property Alexander owns. (Doc. No. 1 at 6-8). State Farm timely removed the case to this court. (*Id.* at 1-3). After the parties conducted discovery, State Farm filed a motion for summary judgment. (Doc. No. 18). Alexander filed a brief in opposition, (Doc. No. 22), and State Farm filed a brief in reply. (Doc. No. 23). For the reasons stated below, I grant State Farm's motion.

## II. BACKGROUND

On January 7, 2018, Alexander purchased a multi-unit apartment building located at 531 West Bancroft Street in Toledo, Ohio for $10,000. (Doc. No. 19-16 at 1; Doc. No. 19-1 at 83-84). Alexander obtained a rental dwelling insurance policy through State Farm, (the "Policy"), and began working to fix up the property. (*See* Doc. No. 18-2; Doc. No. 19-1 at 57, 87-88, 103). Alexander's

brother rented one of the apartments, occasionally staying at the property but primarily using it to store personal property that he resold. (Doc. No. 19-1 at 26-27). The property otherwise was unoccupied. Alexander and his brother were the only people who had keys to the property. (*Id.* at 89).

On the night of August 29, 2019, Alexander received a telephone call. The caller told Alexander that one of the local news stations was reporting on a house fire on Bancroft Street and the house on the broadcast looked like the one Alexander owned. (*Id.* at 127). Alexander attempted to drive over to the Bancroft property but was unable to reach it because the fire department had the roads blocked. (*Id.* at 128-30).

Crews from the Toledo Fire Department responded to reports of a building fire at 531 W. Bancroft, arriving at the scene at 10:37 p.m. (Doc. No. 19-22 at 1, 4). Firefighters found the exterior doors were locked, so they forced entry before ascending to the third floor of the property, where they located and extinguished the fire. (*Id.* at 3). Witnesses reported they had not seen any suspicious activity prior to the fire, though one witness stated she had smelled smoke in the area for several hours before fire crews arrived. (*Id.* at 5).

Alexander subsequently reported the fire to State Farm, which retained Bensen Fire & Safety Consulting to investigate the fire and render an opinion regarding the fire's origin and cause. That company sent two fire investigators – Thomas Bensen and Rob Raker – to examine the property. (Doc. No. 18-4 at 54). Bensen and Raker conducted a site visit a few weeks after the fire.[1]

---

[1] The report states Bensen and Raker conducted their site visit on "May 15, 2019," though the fire occurred on August 29, 2019, and Bensen Fire & Safety was contracted to investigate the fire on September 5, 2019. (Doc. No. 18-4 at 54-55). It is likely the May 15 date is a typographical error, and the site visit took place on September 15, 2019, but neither of the parties have addressed this point. I conclude the actual date of the site visit is not a material fact which must be established during these summary judgment proceedings.

The investigation determined that the fire originated at or near the floor level in front of the sink in the bathroom on the third level of the property. (*Id.* at 81). Bensen and Raker found pieces of clothing on the floor by the sink, and they concluded that the burn patterns at the origin point "were consistent with ignition by an open flame device" such as a match or lighter and that the fire was "the direct result of an intentional human act." (*Id.* at 82, 84). In their report, Bensen and Raker stated they considered and rejected other "[p]otential ignition sources inherent to the structure . . . as being causal for this fire incident." (*Id.* at 83).

Alexander participated in several recorded interviews about the fire, one on September 27, 2019, with a State Farm investigator, and one on January 21, 2020, with counsel for State Farm. (Doc. Nos. 19-1 and 19-2). Then, on February 7, 2020, he submitted a sworn proof of loss statement, making a claim for the estimated property replacement cost of $189,765.71. (Doc. No. 18-3). State Farm denied Alexander's claim on October 23, 2020, after concluding Alexander had breached the "Intentional Acts," "Duties After Loss," and "Concealment and Fraud" provisions of the Policy. (Doc. No. 2 at 16-19). Alexander filed suit on October 29, 2020, alleging State Farm breached the parties' agreement by denying his claim without just cause. He seeks compensatory damages equal to the replacement cost of the property.

### III.     STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### IV.  ANALYSIS

The parties in this case are citizens of different states, and this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Federal courts exercising diversity jurisdiction apply the substantive law of the state in which they sit.  *See, e.g., Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Thus, in this case, Ohio law applies and, under Ohio law, an insurer "bears the burden of proving the applicability of an exclusion in its policy." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 832 (6th Cir. 2012) (citing *Cont'l Ins. Co. v. Louis Marx Co.,* 415 N.E.2d 315, 317 (Ohio 1980)).

State Farm argues it is entitled to summary judgment on Alexander's breach of contract claim because policy coverage is excluded due to Alexander's breach of (i) the "Intentional Acts" policy provision, (ii) the "Concealment or Fraud" policy provision, and (iii) the "Your Duties After Loss" policy provision.  (Doc. No. 18).  Because I conclude the Policy is void due to Alexander's breach of the Concealment or Fraud provision, I need not consider whether State Farm has established Alexander breached the Intentional Acts and Your Duties provisions as well.

The Concealment or Fraud provision of the Policy states "[t]his policy is void . . . if you . . . [have] intentionally concealed or mispresented any material fact or circumstance relating to this insurance, whether before or after a loss."  (Doc. No. 18-2 at 21).  These types of clauses "are fully enforceable under Ohio law." *McCurdy v. Hanover Fire & Cas. Ins. Co.*, 964 F. Supp. 2d 863, 869 (N.D. Ohio 2013) (citations and internal quotation marks omitted).  Misrepresentations are "'considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.'" *Abon, Ltd. v. Transcon. Ins. Co.*, 2005-Ohio-3052, 2005 WL 1414486, at * 13 (Ohio Ct. App. June 16, 2005) (quoting *Long v. Ins. Co. of N. Am.*, 670

5

F.2d 930, 934 (10th Cir. 1982)). "[C]ourts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Abon*, 2005 WL 1414486, at *13 (citing cases). Moreover,

> [M]ateriality [is] not judged by what [the] facts later turn out to be, but whether a false statement "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding," and [a] false sworn answer [is] material if it "may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate."

*Id.* (quoting *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 182-84 (2d Cir. 1984). *See also McCurdy*, 964 F. Supp. 2d at 870 ("The subject of the misrepresentation 'need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time.'") (quoting *Abon*, 2005 WL 1414486, at *13). "Since the purpose of requiring answers to questions is to protect the insurer against false claims, the materiality of false answers should be judged at time of the misrepresentation, and not at time of trial." *Am. Land Inv., Ltd. v. Allstate Ins. Co.*, 375 F. Supp. 3d 670, 679 (S.D. Ohio 2019) (citations and internal quotation marks omitted).

State Farm argues Alexander breached the Concealment or Fraud clause by misrepresenting information about the alarm system at a used car lot he owned and his location on the day of the fire.[2] (Doc. No. 18 at 22-25).

---

[2] State Farm also argues Alexander breached the Concealment and Fraud provision by intentionally mispresenting whether he set the fire. (Doc. No. 18 at 21-22). State Farm claims that, because the building was locked when firefighters arrived and Alexander was the only person with keys for the entire building, either Alexander set the fire and locked the door behind him, or he provided a key to someone else who did the same. (*Id.*). But Alexander denied setting the fire or asking anyone else to do so on his behalf, (Doc. No. 19-1 at 133), and, at the summary judgment stage, I must view the facts and all reasonable inferences in Alexander's favor. *60 Ivy Street Corp.*, 822 F.2d at 1435. The question of whether Alexander's denials are credible would be for a jury to decide. *See, e.g., Anderson*, 477 U.S. at 255.

Alexander stated under oath he had a security alarm system through ADT, LLC at the car lot, the "same system that was in there when [he] bought the place." (Doc. No. 19-1 at 29). He asserted that "99 percent of the time," he set the building security alarm when he left the car lot for the day, and that he did so on the day of the fire. (*Id.* at 120-22). He specifically stated during his January 21, 2020 Examination Under Oath, part of State Farm's post-fire investigation, that "the record[s] should show that." (*Id.* at 122). But these statements were plainly untrue, as business records from ADT show Alexander did not activate the building security system at the car lot until March 25, 2020, almost eight months after the fire and more than two months after he testified that he armed the alarm every day. (Doc. No. 20-2 at 18-41).

Further, the record establishes that Alexander's statements about the alarm system were material to State Farm's investigation. State Farm's attorney made clear that the Examination Under Oath was part of the investigation into Alexander's claim for recovery under the Policy. (Doc. No. 19-1 at 5, 7). Alexander's location on the day of the fire was the subject of a lengthy inquiry during the Examination Under Oath, because the doors to the Bancroft property were locked when firefighters arrived and the fire was started intentionally in a third-floor bathroom, which suggested that the person who set the fire had a key to the property. (*See* Doc. No. 19-1 at 132-33). Alexander stated that he and his brother were the only people who had keys to the property. (*Id.* at 89). Therefore, Alexander's statements about his location on the day of the fire, including where he was and when he was there, were highly relevant to State Farm's investigation into the cause of the fire.

Alexander's sworn, false answers about a matter which could be used to establish his whereabouts on the day of the fire were material misrepresentations because the only explanation supported by the record is that those answers were "calculated . . . to discourage, mislead or deflect" State Farm's investigation. *Abon*, 2005 WL 1414486, at *13. The fact that Alexander did not have a working alarm system at the car lot until well after the Examination Under Oath eliminates the

7

theoretical possibility that he simply may have been confused about whether he in fact set the alarm on the day of the fire. Moreover, despite acknowledging he has the "affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact," (Doc. No. 22 at 4), Alexander did not respond to State Farm's arguments on this point or otherwise attempt to point to evidence which might create a genuine dispute of material fact as to whether he falsely represented that he had armed the alarm – indeed, that he even had an alarm system – before leaving the car lot on the night of the fire. (*See id.* at 6-9).

I conclude there is no genuine issue of material fact that Alexander made material misrepresentations during the Examination Under Oath and that the evidence on this point "is so one-sided" that State Farm must prevail as a matter of law. *Anderson*, 477 U.S. at 252. *See also Am. Land Inv.*, 374 F. Supp. 3d at 679 (granting insurer's motion for summary judgment based upon policy's concealment or fraud clause).

## V. CONCLUSION

For the reasons stated above, I grant State Farm's motion and enter judgment in its favor on Alexander's breach of contract claim. (Doc. No. 18).

So Ordered.

                                                 s/ Jeffrey J. Helmick
                                                 United States District Judge